IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00973-WDM-MEH

JONATHAN A. KASPER,

      Applicant,

vs.

AL ESTEP, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## RECOMMENDATION FOR
## DISMISSAL OF AMENDED APPLICATION

---

**Entered by Michael E. Hegarty, United States Magistrate Judge**

Applicant has pending before this Court an Amended Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 ("Amended Application") (Docket #4). Pursuant to the Court's Order

to Answer (Docket #9), Respondents have filed their Answer (Docket #11), together with their State

Court Documents, Exhibits to Respondents' Answer to Order to Show Cause (Docket #12) . Under

the provisions of 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, this matter has been referred to me for

Recommendation on dispositive matters and for ruling on nondispositive matters. Based on the

record contained herein, I **recommend** that the Amended Application be denied and that this matter

be dismissed, with prejudice.

The parties are advised that they shall have ten (10) days after service hereof to serve and file

any written objections in order to obtain reconsideration by the District Judge to whom this case is

assigned. FED. R. CIV. P. 72. The party filing objections must specifically identify those findings or

recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## FACTS

Applicant is a state prisoner in Colorado, and he has filed a *pro se* Amended Application challenging his Colorado conviction for felony murder.  The basic factual background underlying the conviction is stated by the Colorado Court of Appeals as follows:

> [Applicant] entered a former neighbor's house on the pretext of using her telephone. He then bludgeoned her to death, ransacked the house, and fled.  When later arrested and questioned by police, [Applicant] first denied any involvement.  But when informed of the physical evidence implicating him, he confessed that he had gone to the victim's house with the intent to rob her, but blamed the actual killing on a companion.  At trial, he admitted killing the victim, but claimed that he had acted in self defense and that he formed the intent to search her house for money only after he killed her.

STATE COURT DOCUMENTS, EXHIBITS TO RESPONDENTS' ANSWER TO ORDER TO SHOW CAUSE, Docket #12, Exh. C.

Pertinent to the Amended Application filed in this Court is also the fact that prior to his arrest, the Applicant was interviewed by police detectives at his mother's home. *Id.* at Docket #12, Exh. I, pp. 2-3. During the interview, the detectives did not tell the Applicant about evidence they had against him, which was his fingerprint found in the kitchen sink near the body of the victim, and while the Applicant admitted that he had asked the victim for money, he denied that he had been inside the victim's house. *Id.*

Applicant was ultimately convicted of first degree felony murder and sentenced to life imprisonment following a jury trial in 1993. *See id.* The conviction was affirmed on direct appeal, and a state postconviction appeal was also unsuccessful. *Id.*

On June 8, 2005, the Applicant filed his Amended Application in this Court, seeking federal habeas relief. In the Amended Complaint, the Applicant asserts four claims for relief. In the first claim, he alleges that he was denied the effective assistance of counsel because his trial attorney "failed to diligently investigate, prepare and present all relevant material evidence available in defense of the charges." *See* AMENDED APPLICATION, Docket #4, p. 5. The second claim contends that detectives conducted a "custodial interrogation" of the Applicant at his mother's home without benefit of a warning pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and his third claim raises the argument that the statements elicited by the detectives were not given voluntarily in violation of *Miranda*, with both claims being presented as violations of Applicant's Fifth Amendment rights. Finally, Applicant's fourth claim alleges that the detectives, without a warrant or the presence of exigent circumstances, used deception to obtain consent to enter his home and to effect a search and/or seizure in violation of his Fourth Amendment rights.

In their Answer to the allegations, the Respondents concede that the Amended Application is timely filed under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and agree that Applicant has technically exhausted state court remedies with regard to his claims. Respondents contend that exhaustion is only "technical," because two of the claims, Claim One and Claim Four, were never presented to the highest state court but because of state procedural bars which would prevent the Applicant from filing those claims now, there is no available state court remedy and therefore, the claims are technically exhausted. Further, the Respondents argue that all claims lack merit.

Applicant proceeds in this action *pro se*. As a *pro se* litigant, Applicant's filings are entitled to liberal construction by this Court. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate. *Hall*, 935 F.2d at 1110.

## DISCUSSION

### I.   Procedural Bar.

Exhaustion of available and adequate state court remedies is a prerequisite to a habeas corpus applications in federal court. *Granberry v. Greer*, 481 U.S. 129 (1987); *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b). State remedies are not deemed exhausted until the highest state appellate courts have had an opportunity to consider the merits of the claim which an applicant seeks to present in federal court. *See Pitchess v. Davis*, 421 U.S. 482 (1975); *Qureshi v. Diesslin*, 654 F. Supp. 555 (D. Colo. 1987). For the purpose of the exhaustion requirement, a federal constitutional claim is not fairly presented to a state court by the mere citation of a constitutional principle. *See, e.g., Qureshi*, 654 F. Supp. at 557. With regard to Applicant's first and fourth claims, the

4

Respondents argue that the claims have not been presented to the state courts either on direct or postconviction appeal. A review of Applicant's state briefing in this regard clearly demonstrates that the Respondents are, for the most part, correct.

### A.      Claim One.

On direct appeal, the Applicant presented claims of insufficient evidence to support his conviction, and that the trial court had erred in refusing to give a jury instruction he had tendered. *See* STATE COURT DOCUMENTS, EXHIBITS TO RESPONDENTS' ANSWER TO ORDER TO SHOW CAUSE, Docket #12, Exh. A. Neither claim is relevant to the issues raised in the Amended Application filed in this Court. In his postconviction appeal, Applicant did specify a claim of ineffective assistance of counsel. However, the claim centered solely on the notion that counsel was ineffective for failing to raise the issue of suppression of his statements made during the interview at his mother's home under *McCall v. People*, 623 P.2d 397 (Colo. 1981). *Id.* at Exh. F. The ineffective assistance of counsel claim the Applicant seeks to bring in this Court is a broader and more general claim of ineffective assistance of counsel, as follows:

> The record shows defense counsel prejudiced the trial when he failed to diligently investigate, prepare and present all relevent [sic] material evidence available in defense of the charges, . . . .

AMENDED APPLICATION, Docket #4, p. 5.

While the record reflects that in postconviction briefing to the trial court, the Applicant took issue with the effectiveness of trial and appellate counsel on more general issues of investigation and preparation, those issues were abandoned and were never presented in any appeal to the state appellate courts. *Compare* APPLICATION, Docket #2, at Attchmt 4a (Applicant's *pro se* motion) and

4b (supplemental briefing upon appointment of counsel)[1] *with* STATE COURT DOCUMENTS, EXHIBITS TO RESPONDENTS' ANSWER TO ORDER TO SHOW CAUSE, Docket #12, Exh. F.   Accordingly, neither the Colorado Court of Appeals nor the Colorado Supreme Court have had an opportunity to consider the merits of a claim of ineffective assistance of counsel such as that which the Applicant has presented in his federal habeas request.   Therefore, Applicant's state remedies have not been fully exhausted with regard to this claim.

If a habeas applicant has failed to raise a claim properly in the state courts, and no state judicial remedies are available to adjudicate the claim at the time the federal habeas application is filed, the applicant meets the technical requirements for exhaustion because no state remedies are available.   *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).   Commonly known as the doctrine of procedural default, this tenet prevents applicants from evading the purpose of the exhaustion requirement by defaulting their state remedies and then seeking federal habeas relief.   The procedural default doctrine ensures that a criminal defendant must give the state courts a full and fair opportunity to address and resolve the defendant's constitutional claims before resorting to federal court.

In *Coleman*, the United States Supreme Court said:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and

---

[1]Although the Amended Application is the operative pleading in this case, and the Applicant did not submit any of the attachments provided with the original Application in conjunction with the Amended Application, the Court may take judicial notice of the previously filed court documents and matters of public record.  *See, e.g., Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996); *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994); *see, also, Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 892 (D. Del. 1991).

actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice.

*Id*. at 750.  In some circumstances, a finding of procedural default requires that the federal court have before it an opinion from the state court which clearly states that its decision to deny relief to the applicant was based on separate, adequate and independent state procedural rule.  However, procedural default also may be found when the applicant has failed to exhaust state court remedies and "the court to which [applicant] would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  *Id*. at 735, n. 1.

Colorado's procedural rules now bar the Applicant from again appealing claims he has previously raised, and from raising new claims related to the criminal conviction at issue here.  First, the Applicant pursued a direct appeal of his convictions through the Colorado Court of Appeals, and his Petition for Certiorari was denied by the Colorado Supreme Court.  He may not file a second direct appeal of his conviction.  Second, Colorado's successive petition rule prevents the Applicant from raising new issues in a second Rule 35(c) motion.  *See People v. Hubbard*, 519 P.2d 945, 948-49 (1974) (successive application rule).  Further, the period of limitations for a Rule 35(c) motion has expired.  COLO. REV. STAT. § 16-5-402(1) (period of limitations for Rule 35(c) motions).  The Applicant does not have any real prospect of obtaining relief in the Colorado state courts based on the claim of ineffective assistance of counsel he asserts in his Amended Application in this case.  Therefore, the claim is technically exhausted, but procedurally barred from review in these federal habeas proceedings.  *Coleman*, 501 U.S. at 729-30.

The Applicant can, however, overcome procedural default if he can demonstrate either (1) cause for and prejudice from the default, or (2) that not reaching his claims would result in a

7

fundamental miscarriage of justice. *Id.* at 749. In this case, the Applicant can demonstrate neither exception.

By not including all of the postconviction claims that he argued in the trial court in his appellate court briefing, the Applicant effectively abandoned those claims. Applicant cannot show cause based on an argument that postconviction appellate counsel either failed to present those claims or ignored his requests to present the claims. There is no constitutional right to counsel in collateral proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Therefore, a failure of post-conviction counsel resulting in procedural default "cannot constitute cause to excuse default in federal habeas." *Coleman*, 501 U.S. at 757. Further, the record does not demonstrate that a miscarriage of justice may result if this Court does not hear this claim. To make such a showing, Applicant must demonstrate that a constitutional error has probably resulted in the conviction of one who is actually innocent. *See Bousley v. United States*, 523 U.S. 614, 623 (1998).

> To be credible, such a claim requires [an applicant] to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Schlup v. Delo*, 513 U.S. 298, 324 (1995).

No such evidence is apparent from the record and, despite the Respondents' raising the issue in their Answer, Applicant has only requested that he be allowed to return to state court to exhaust his remedies. A request which was denied based upon its futility (Docket #26).

Applicant has procedurally defaulted his claim of ineffective assistance of counsel, and the default cannot be excused. Accordingly, this Court cannot reach the merits of this claim, and it must be dismissed.

**B.    Claim Four.**

Whether or not the Applicant has procedurally defaulted his fourth claim, as argued by the Respondents, is less clear cut.  This is because the starting point for claims two, three and four of the Amended Application is the fact that any Fourth or Fifth Amendment violations which may have been raised in Applicant's state postconviction proceedings were raised within the context of an ineffective assistance of counsel claim, and not presented as stand-alone claims.  Applicant's primary argument in this regard in the state courts was that trial counsel and counsel on direct appeal had failed to effectively litigate Fourth Amendment and other issues arising under *McCall v. People*, 623 P.2d 397 (Colo. 1981).  On federal habeas review, only "violation[s] of the Constitution or laws or treaties of the United States" are cognizable under § 2254.  28 U.S.C. § 2254(a).  Therefore, any alleged violation of Colorado state law or the state Constitution will not constitute a valid claim in a § 2254 habeas application. An additional concern is whether raising allegations concerning potential Fourth Amendment violations within his primary argument of ineffective assistance of counsel constituted fair presentation to the Colorado Court of Appeals of the claim which the Applicant now seeks to bring in this Court, which is not a simple question to answer, nor can it be readily discerned from the face of the materials in the record.  Fortunately, this is not a deterrent to resolution of this claim by this Court because, as directed by the Court of Appeals for the Tenth Circuit:

> When questions of procedural bar are problematic, however, and the substantive claim can be disposed of readily, a federal court may exercise its discretion to bypass the procedural issues and reject a habeas claim on the merits.

*Canon v. Mullin*, 383 F.3d 1152, 1159 (10th Cir. 2004) (citing *Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir. 2000)).

In his fourth claim for relief, Applicant contends that the state court's failure to suppress his statements obtained by the police as a result of a warrantless entry into his home, without exigent circumstances and voluntary consent, violated his Fourth Amendment rights based upon the Supreme Court ruling in *Payton v. New York*, 445 U.S. 573 (1980).   In *Payton*, the United States Supreme Court recognized that even with probable cause, police officers may not enter a dwelling to make an arrest absent consent or exigent circumstances.   *Payton*, 445 U.S. at 590 ("[T]he Fourth Amendment has drawn a firm line at the entrance to the house.   Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.").   As correctly cited by the Respondents, federal habeas review of Fourth Amendment claims is governed by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976).   In *Stone*, the Court stated:

> [W]here the State has provided an opportunity for full and fair litigation of the Fourth Amendment Claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Id*. at 494.

The Court of Appeals for the Tenth Circuit has noted that "[a]lthough *Stone* announced a verbal standard, it failed to clothe the words 'opportunity for full and fair litigation' with any precise meaning." *Gamble v. State*, 583 F.2d 1161, 1165 (10th Cir. 1978).   Therefore, the Tenth Circuit has constructed the following definition:

> "Opportunity for full and fair consideration" includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim.   It also includes the full and fair evidentiary hearing contemplated by *Townsend* [*v. Sain*, 372 U.S. 293 (1963)].   Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards. Thus a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court wilfully refuses to apply the correct and controlling constitutional standards.   Deference to state court consideration of

Fourth Amendment claims does not require federal blindness to a state court's wilful refusal to apply the appropriate constitutional standard.

*Gamble*, 583 F.2d at 1165.

The Tenth Circuit has gone on to clarify that "'[o]pportunity' includes procedural opportunity to raise a claim, and it includes a full and fair hearing." *Sanders v. Oliver*, 611 F.2d 804, 808 (10th Cir. 1979).

As argued by the Respondents with regard to this claim, as substantiated by the record, and as undisputed between the parties, the Applicant did file a pre-trial motion to suppress and did receive a hearing on the allegations raised in that motion. *See* ANSWER TO ORDER TO SHOW CAUSE, Docket #11, p. 17; APPLICATION, Docket #2, Attchmt 4a, p. 3 and Attchmt 4b, pp. 9-10.   However, the briefing to the trial court on postconviction appeal makes clear that certain warrantless search and/or seizure issues under the Fourth Amendment, to include the issue of voluntary consent to entry of the residence, were not raised by trial counsel at the hearing or by appellate counsel on direct appeal. *See* APPLICATION, Docket #2, Attchmt 4b, pp. 9-11.  Therefore, the record substantiates a finding that the Fourth Amendment issue Applicant seeks to bring in this Court was not considered or determined by the trial court prior to trial nor was it addressed on direct appeal.  This does not demonstrate that the state failed to provide the Applicant with the opportunity to raise and litigate the issue, only that his attorneys did not raise the challenge.  While denial of a full and fair opportunity to litigate a Fourth Amendment claim based on an attorney's failure to act or perform is cognizable in federal habeas proceedings notwithstanding the rule in *Stone*, such an argument is more properly viewed as an assertion of ineffective assistance of counsel.  *See Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986).  This appears to be the tactic taken by the Applicant in the state courts within

11

his postconviction proceedings.  *See* APPLICATION, Docket #2, Attchmt 4b and STATE COURT DOCUMENTS, EXHIBITS TO RESPONDENTS' ANSWER TO ORDER TO SHOW CAUSE, Docket #12, Exh. F and H.  The trial court held a hearing on Applicant's postconviction motion on January 13, 2003. *See* APPLICATION, Docket #2, Attch'd partial Reporter's Transcript.  Appeal was thereafter taken to the Colorado Court of Appeals, and a Petition for Writ of Certiorari to the Colorado Supreme Court was filed.  STATE COURT DOCUMENTS, EXHIBITS TO RESPONDENTS' ANSWER TO ORDER TO SHOW CAUSE, Docket #12, Exh. F and J.  Accordingly, the record demonstrates that the procedural opportunity to raise or otherwise present a Fourth Amendment claim was afforded to the Applicant.

Liberally construing the Applicant's contention in this Court that the "state courts failed to follow the requisites and standards of review set forth in U.S. Supreme Court precedent" as an argument that the postconviction proceedings failed to recognize and apply the correct Fourth Amendment constitutional standards, the argument is foreclosed by *Stone*.  First, the claim presented by the Applicant in the state court was that of ineffective assistance of counsel.  Therefore, as such a claim would dictate, the overriding standard would be that of *Strickland v. Washington*, 466 U.S. 668 (1984) and not that of any Fourth Amendment analysis.  Second, while the Colorado state courts looked to the state case of *McCall* in making their decision on the Applicant's allegations, the ruling in *McCall* was solidly based in Fourth Amendment precedent announced by the United States Supreme Court, to include that of *Payton*.  *See McCall*, 623 P.2d at 401.  The standard noted by the Colorado Court of Appeals was as follows:

> The [Colorado] supreme court concluded the procedure employed by the police [in *McCall*] violated the Fourth Amendment, which forbids warrantless, nonconsensual entries into a home to make an arrest, absent exigent circumstances, and the court found no exigent circumstances.  The court also determined that there was no

voluntary consent to arrest because the police deceived the defendant's parents about their reason for being there.

STATE COURT DOCUMENTS, EXHIBITS TO RESPONDENTS' ANSWER TO ORDER TO SHOW CAUSE, Docket #12, Exh. I, p. 4 (citing *McCall*, 623 P.2d at 402-02).

The state appellate court went on to determine that based on the record before it, "no constitutional concerns regarding warrantless arrests [were] present" and that "[b]ecause an argument under McCall would have been unsuccessful under these circumstances, trial counsel was not ineffective in failing to raise it." *Id.* at Exh. I, p. 5. Applicant has failed to provide any well-pled facts or facts from which it can be inferred that the court failed to recognize or wilfully refused to apply the correct and controlling constitutional standards in this regard, and no such evidence is apparent from the record. Accordingly, Applicant is not entitled to federal habeas review of his *Payton* claim, and it must be dismissed.

## II.     Remaining Claims.

Respondents do not raise the issue of procedural default with regard to Applicant's Claims Two and Three. The rule of procedural default in habeas cases "is grounded in concerns of comity and federalism; it is not jurisdictional." *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998). Therefore, it is appropriate for the Court to proceed with review of these claims under the standards applicable to general federal habeas review of Applicant's claims.

### A.     Standard of Review.

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

13

"When a federal district court reviews a state prisoner's habeas [application] pursuant to 28 U.S.C. § 2254 it must decide whether the [applicant] is 'in custody in violation of the Constitution or laws or treaties of the United States.' The court does not review a judgment, but the lawfulness of the [applicant's] custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Accordingly, based on denial of certiorari review by the Colorado Supreme Court in Applicant's case, habeas review in this Court is concerned with the proceedings in the Colorado Court of Appeals which was the final substantive proceedings in the state appellate review process.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to all federal habeas applications filed after the AEDPA's effective date of April 24, 1996, regardless of when the state proceedings occurred. *See Trice v. Ward*, 196 F.3d 1151, 1158 (10th Cir. 1999); *Moore v. Gibson*, 195 F.3d 1152, 1163 (10th Cir. 1999). Under AEDPA, an applicant is entitled to federal habeas relief only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000).

As the Supreme Court recently stated:

14

> A state-court decision is contrary to . . . clearly established precedents if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.  A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*,  544 U.S. 133, 125 S.Ct. 1432, 1438-39 (2005) (internal citations omitted).

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [those] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002).  So, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard, the reviewing court may presume an adjudication on the merits and apply AEDPA deference.  *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).

Factual findings made by the state trial and appellate courts are presumed correct, with the applicant having the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003).  "[W]hether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it."  *Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

Even if the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993), the harmless error standard of *Brecht* and *O'Neal v. McAninch*, 513 U.S. 432 (1995), must be applied.  *See Herrera v. Lemaster*, 301 F.3d 1192, 1200 (10th Cir. 2002).  Under *Brecht,* habeas relief is not proper unless the error had a "substantial and injurious effect or influence

in determining the jury's verdict." *Brecht*, 507 U.S. at 623. *O'Neal* addresses the situation where a court is in "grave doubt" about the likely effect of the error on the jury's verdict – that is, where "the matter is so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. In such a case, *O'Neal* instructs a court to treat the error "as if it had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting Brecht, 507 U.S. at 623).

### A.    Claim Two.

In his second claim, the Applicant argues that detectives conducted a "custodial interrogation" of him in his mother's home without benefit of a warning pursuant to *Miranda*, and therefore, his Fifth Amendment rights were violated when the trial court failed to suppress those statements. The Respondents do not dispute that the Applicant was not advised of his *Miranda* rights before he was interviewed at his mother's home, but they contend that he was not in custody and therefore, such a warning was not needed.

Citing to exclusively state case law, the Applicant presented the issue of whether the statements given by him at his mother's home were the product of a custodial interrogation and therefore subject to *Miranda* in the appeal of his postconviction ineffective assistance of counsel claim. *See* STATE COURT DOCUMENTS, EXHIBITS TO RESPONDENTS' ANSWER TO ORDER TO SHOW CAUSE, Docket #12, Exh. F, pp. 3-4, 8, 10. After considering Applicant's argument, however, the Colorado Court of Appeals upheld the trial court's ruling that the Applicant was not in custody. *Id.* at Exh. I, p 6. While the opinion of the state appellate court is extremely cursory and does not specifically reference the federal basis for the claim or make citation to any federal case law governing *Miranda* concerns in this regard, the state appellate court upheld the trial court's ruling in the face

of Applicant's argument, which was made purely under the principles against self-incrimination governed by the Fifth Amendment of the United States Constitution, albeit under citation to state case law. Therefore, the Colorado Court of Appeal's decision must be treated as an "adjudication on the merits," and deferral to its result is warranted. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 n.1 (10th Cir. 2004) (even though state court did not expressly state its reasoning or the federal basis for the claim, where there is no indication that the state court did not reach the merits, the decision is treated as an adjudication on the merits). Accordingly, this Court must uphold the appellate court's decision "unless our independent review of the record and pertinent federal law persuades us that its result contravenes or unreasonably applies clearly established federal law, or is based upon an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1197 (citing *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)). This is not a *de novo* analysis of the claim, but instead, requires deference to the decision unless "its result - not its rationale - is 'legally or factually unreasonable.'" *Gipson*, 376 F.3d at 1197.

It is well established that "police officers are not required to administer Miranda warnings to everyone whom they question." *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). Miranda warnings are required where a suspect is "in custody," which occurs when there has been a "formal arrest or restraint on freedom of movement." *Id.* In *Berkemer v. McCarty*, 468 U.S. 420 (1984), the Supreme Court held that a suspect is not "in custody" for purposes of *Miranda* unless his "freedom of action is curtailed to a 'degree associated with formal arrest.'" *Id.* at 440. A reviewing court determines whether or not a defendant is in custody by considering "the objective circumstances of the interrogation," rather than "the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 320 (1994). Instead of

17

focusing upon where the questioning occurred or if the individual is a suspect, the determination must be concerned with "how a reasonable man in the suspect's position would have understood his situation." *Berkemer*, 468 U.S. at 442. A "request" or "invitation" to be questioned by police does not, in and of itself, satisfy the custody requirement. *See Mathiason,* 429 U.S. at 495. The Supreme Court has also held that a suspect is not in custody for purposes of *Miranda* simply because he is the "focus" of an investigation." *See Beckwith v. United States*, 425 U.S. 341, 347 (1976). The fact that an interview is conducted by law enforcement officers or the fact that "the questioned person is one whom the police suspect" does not transform an interview into custodial interrogation. *Mathiason*, 429 U.S. at 495.

As noted previously, a stand-alone claim alleging custodial interrogation in violation of the Applicant's constitutional rights was not made on appeal. However, in passing reference contained within its conclusion of Applicant's failure to establish his ineffective assistance of counsel claim, the appellate court indicated it agreed with the trial court's determination that the Applicant was not in custody when questioned at his mother's home. Notably, the trial court had made its ruling as follows:

> As to the statements that were made to the detectives at the time that [Applicant] was first interviewed with his mother, the Court would find that there was no custodial interrogation, that he was not in custody; he was not arrested; he didn't feel he was in custody. Mrs. Kasper, his mother, didn't indicate she felt he was in custody. No one has testified that he was not allowed to leave in any fashion. In fact, the detectives, later, after obtaining an arrest warrant, came back.

APPLICATION, Docket #2, attch'd Reporter's Transcript on Rule 35(c), p. 141.

Additionally, within its opinion, the Colorado Court of Appeals did note:

> [Applicant] testified that the detectives said "they were in the process of their investigation and they were interviewing witnesses," but they never told him he was

a suspect. [Applicant] said he felt comfortable during the interview, but would have wanted to "know about my rights" if he had known he was a suspect.

The detective testified that, because of the discovery of defendant's fingerprint, they went to [Applicant's] home to determine whether he had an explanation for being in the murder victim's home.

STATE COURT DOCUMENTS, EXHIBITS TO RESPONDENTS' ANSWER TO ORDER TO SHOW CAUSE, Docket #12, Exh. I, p. 3.

Nothing in the opinion evidences that the result reached by the Colorado Court of Appeals contravenes the objective standard to be observed in questions of whether an interview rises to the level of a custodial interrogation, nor that the state court unreasonably formulated or applied legal principles in light of Supreme Court precedent concerning this issue.  While subjective factors are mixed with objective ones in the trial court's ruling, there is no indication that the appellate court improperly focused on those subjective factors.  It is the Applicant's burden to demonstrate that the result in this regard was legally unreasonable, and he has failed to do so.  *Cf. Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (it is Applicant's burden to show that the state court's decision was objectively unreasonable, not merely that the state court applied Supreme Court rulings incorrectly). The lack of a detailed opinion on this issue provides no basis for relief.  *See Goss v. Nelson*, 439 F.3d 621, 636 (10th Cir. 2006) (if the explanation meets AEDPA standards under 28 U.S.C. § 2254(d), the fact that the appellate court "did not dwell on all of the factors suggested by United States Supreme Court case law" provides no basis for relief).

With regard to whether the result was factually unreasonable, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable.  *Cf. Weaver v. Bowersox*, 241

F.3d 1024, 1030 (8th Cir. 2001) (state court's determination of facts must be objectively unreasonable in light of evidence available to the state court).   Mere disagreement with the state court's determination, or even erroneous factfinding, is insufficient to grant relief if the court acted reasonably. *Id.* Further, any factual findings made by the state court are presumed to be correct, and it is the Applicant's burden to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Rice v. Collins* — U.S. —, 126 S. Ct. 969 (2006).

Here, on appeal, the Applicant brought to the court's attention the alleged custodial interrogation. State Court Documents, Exhibits to Respondents' Answer To Order To Show Cause, Docket #12, Exh. F, p. 3-4.   Because the attention of the brief was centered on the claim of ineffective assistance of counsel under the state case of *McCall*, his presentation of facts and argument are not as clear as they would have been on a stand-alone constitutional claim.   However, Applicant did present background and argument on the issue.   *Id.* at Exh. F, pp. 7-10.

Presumably because the allegations of custodial interrogation were not raised as a stand-alone claim, the state countered the Applicant's position in summary fashion and primarily directed the appellate court to the trial court ruling.   State Court Documents, Exhibits to Respondents' Answer To Order To Show Cause, Docket #12, Exh. G, p. 10.

Although the evidence in the record was disputed between the parties, both parties were clearly given the opportunity to persuasively present their positions to the state appellate court, and there is nothing in the record to demonstrate that the court failed to consider or misunderstood the evidence presented to them under these arguments.   *See, e.g., Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003) (where state court plainly misunderstands the record in making its findings, and the confusion goes to a material factual issue that is central to the applicant's claim, that

misunderstanding can result in factual finding that is unreasonable); *Miller-El v. Cockrell*, 537 U.S. 322, 347 (2003) (state courts are not required to address every hint or shred of proof suggested to them, nor are they required to "make detailed findings addressing all the evidence before [them]."). Further, the Applicant has not demonstrated that the state court's factual determination was incorrect by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Accordingly, there appears no basis upon which this Court can make a finding of that the result of the state court's decision was factually unreasonable.

The record fails to demonstrate that the result reached by the Colorado Court of Appeals was either legally or factually unreasonable in this regard, and therefore, deference to the decision is warranted. Accordingly, the Applicant is not entitled to federal habeas relief on the second claim of his Amended Application, and the same should be dismissed.

**B.    Claim Three.**

The Applicant's third claim contends that the statements elicited from him by the detectives at his mother's home were not given voluntarily, in violation of *Miranda*, thereby violating his Fifth Amendment rights. As pointed out by the Respondents, because the Amended Application does not specify, this claim must be based upon the arguments that the Applicant made in state court proceedings which were that the detectives used a deception or ruse to get into the home and then conned him into thinking he was just a witness and not a suspect in the case. The Respondents argue that  there was no deception or ruse, and that even if there was, it did not violate the Applicant's constitutional rights. Again in this regard, the state appellate court did not produce detailed analysis or findings on the issue, because the matter was not raised as a stand-alone claim, but upheld the determination of the trial court in the face of Applicant's arguments. Accordingly, under *Gipson*, this

Court looks to whether the result of the decision was either legally or factually unreasonable.  *See Gipson*, 376 F.3d at 1197.  The issue of voluntariness is a mixed question of fact and law that is subject to independent consideration in federal habeas proceedings.  *See Miller v. Fenton*, 474 U.S. 104, 112 (1985).   Determinations of factual issues by state courts, however, such as whether police used deception or intimidation, are given a presumption of correctness, which may only be rebutted by clear and convincing evidence to the contrary.  *Id.* (a state court's findings on subsidiary questions in determining voluntariness are conclusive on the habeas court).   Notably, while the prosecution has the burden of proving voluntariness during a suppression hearing, the burden shifts to the applicant to prove involuntariness on federal habeas corpus review.  *See Miller v. Fenton*, 796 F.2d 598, 604 (3rd Cir.), *cert. denied*, 479 U.S. 989 (1986).

Rejection by the courts of the use of deceptive tactics to obtain a waiver of constitutional rights arises from language in *Miranda* which indicates that a suspect may not be "threatened, tricked, or cajoled into a waiver" of constitutional rights.   *Miranda*, 384 U.S. at 476.   Subsequent cases interpreting *Miranda*'s language show that trickery or deceit is only prohibited to the extent it deprives the suspect "of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them."  *Moran v. Burbine*, 475 U.S. 412, 423 (1986).   In addition, the "Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege."  *Colorado v. Spring*, 479 U.S. 564, 572 (1987).   Nor does the Constitution require the police to "supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights."  *Moran*, 475 U.S. at 422.   Use of affirmative misrepresentations is very different from the failure of police to

provide information which concerns the wisdom of speaking with law enforcement officials without a *Miranda* warning or to speak in spite of such a warning.  *See Spring*, 479 U.S. at 576.

Although citing to the state case of *People v. Pease*, 934 P.2d 1374, 1378 (Colo. 1997), as analogous authority, the Colorado Court of Appeals did identify the governing standard in this regard.  S*ee* STATE COURT DOCUMENTS, EXHIBITS TO RESPONDENTS' ANSWER TO ORDER TO SHOW CAUSE, Docket #12, Exh. I, p. 5.  Further, nothing in the record demonstrates that the Colorado Court of Appeals did not apply the standard  recognized by the United States Supreme Court and applied a legal standard "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to the correct legal standard.  *See Williams v. Taylor*, 529 U.S. 362, 406-07 (2000).  The court indicated that it understood the case of *Pease* to stand for the proposition that:

> [I]n the context of a <u>Miranda</u> waiver, "[n]othing in the Constitution or <u>Miranda</u> requires police to tell a suspect all the facts and circumstances which might affect the suspect's decision whether to waive his rights"; the Constitution does not require that police give a suspect information "to help him calibrate his self-interest[.]"

STATE COURT DOCUMENTS, EXHIBITS TO RESPONDENTS' ANSWER TO ORDER TO SHOW CAUSE, Docket #12, Exh. I, p. 5.

Because the state court identified and applied the correct governing legal principal in this regard, Applicant has not shown that he is entitled to federal habeas review of this claim because the state court decision was legally unreasonable.

As with the Applicant's second claim, the evidence in the record in this regard was disputed between the parties and both parties were clearly given the opportunity to persuasively present their positions to the state appellate court.  Although the Applicant had argued on appeal that the trial court had ignored testimony and "white-washed the deceptive police conduct," there is nothing in the

record to demonstrate that the appellate court failed to consider or misunderstood the evidence presented to them under these arguments. *See, e.g., Wiggins* 539 U.S. at 528-29; *Miller-El*, 537 U.S. at 347. The Colorado Court of Appeals summarily agreed with the trial court's determination that the Applicant's statements were voluntarily made. S*ee* STATE COURT DOCUMENTS, EXHIBITS TO RESPONDENTS' ANSWER TO ORDER TO SHOW CAUSE, Docket #12, Exh. I, p. 6. This Court is in no position to find error in the state appellate court's abbreviated consideration of the issue, which does not re-examine questions of weight or credibility, because determinations about witness credibility and inferences to be drawn from testimony made in the state courts, which would include the trial court, are binding on this Court. *See generally Rushen v. Spain*, 464 U.S. 114, 121 n.6 (1983). The Applicant has failed to present evidence that the state court should have adopted his version of the facts. *See* 28 U.S.C. § 2254(e); *see also Lile v. McKune*, 45 F. Supp.2d 1157, 1161 (D. Kan. 1999) (explaining that Applicant bears the burden of establishing by convincing evidence that any challenged factual determination is erroneous, and that factual issues include the recital of events and the credibility of narrators). Accordingly, federal habeas review of this claim because the state court decision was factually unreasonable is also not warranted, and the claim should be dismissed.

## CONCLUSION

As the discussion above demonstrates, Applicant is not entitled to relief under 28 U.S.C. § 2254. Pursuant to Rule 8 of the rules governing section 2254 proceedings, no evidentiary hearing is required.

Based upon the foregoing analysis, and the entire record herein, I hereby **recommend** that District Judge Walker D. Miller **deny** the Amended Application [Filed June 8, 2005; Docket #4] and that this case be dismissed with prejudice.

Dated at Denver, Colorado, this 3rd day of July, 2006.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

25